UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HOLLY PARKS,

                            Plaintiff,

                            Case # 20-CV-6384-FPG

v.

                            DECISION & ORDER

LAURA SALTSMAN, *et al.*,

                            Defendants.

## INTRODUCTION

Plaintiff Holly Parks moves for attorney's fees and costs in connection with the Rule 68 Offer of Judgment that she accepted. ECF No. 152. Defendants Paul Stevens and Jennifer Wall oppose the motion. ECF No. 153. For the reasons that follow, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

Per the Second Circuit's decision, Plaintiff is entitled to request reasonable attorney's fees and costs in connection with the accepted offer. *See Parks v. Stevens*, No. 22-2329, 2023 WL 8446805, at *2 (2d Cir. Dec. 6, 2023); *see also* 42 U.S.C. § 1988(b). "A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. In the Second Circuit, attorney's fees awards are calculated based on the 'presumptively reasonable fee' approach." *Ekukpe v. Santiago*, No. 16-CV-5412, 2020 WL 7027613, at *1 (S.D.N.Y. Nov. 30, 2020) (internal citation and brackets omitted). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166

(2d Cir. 2011); *see also id.* at 167 (noting that adjustments to the lodestar are only appropriate in "rare circumstances" where it does "not adequately take into account a factor that may properly be considered in determining a reasonable fee"). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Ekukpe*, 2020 WL 7027613, at *1.

## DISCUSSION

Plaintiff requests $784,795 in attorney's fees and $24,051.19 in costs. *See* ECF No. 152-4 at 28. Defendants object to the request for attorney's fees on several grounds. The Court examines and resolves those objections below.

### I. Reasonable Hourly Rate

The Court first determines the reasonable hourly rate. Plaintiff was represented by the law firm of Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM"), a "33-lawyer firm in New York City that specializes in civil rights and commercial litigation." ECF No. 152-1 ¶ 1. In connection with this action, Plaintiff relied on the services of nineteen attorneys and eight paralegals. ECF No. 152-4 at 23-24. Andrew G. Celli, Jr. charged $900 per hour; Ilann M. Maazel charged $800 per hour; and the remaining attorneys charged between $450 to $700 per hour. *See id.* Travel was billed at a one-half rate. *See id.* The paralegals all charged $200 per hour. *See id.* at 24.

Defendants argue that these "out-of-district" rates should not be permitted and that, instead, fees should be calculated at a rate of $300 per hour for partners, $200 per hour for associates, and $100 per hour for paralegals. *See* ECF No. 153 at 2-8.

The Court finds it appropriate to use out-of-district rates. "The reasonable hourly rate is the rate a paying client would be willing to pay," keeping in mind "that a reasonable, paying client

wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors." *Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) (summary order).[1] "[A] reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill*, 522 F.3d at 191. "This presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Id.*

In *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009), the Second Circuit expanded upon the standard for applying a higher out-of-district rate:

> [W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. . . . The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially

---

[1] The *Johnson* factors are:

> [(1)] the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Chaparro*, 2021 WL 5121140, at *1 n.2.

3

> inferior result. . . . Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009) (internal citation omitted).

In her briefing, Plaintiff argues that out-of-district rates are warranted because (1) this was a complex disability abuse and neglect matter requiring special expertise, and (2) no in-district counsel possessed the same expertise. ECF No. 159 at 7-12. Defendants only dispute the second proposition. ECF No. 153 at 2-4.

In support of her motion, Plaintiff relies on (a) the declaration of Andrew G. Celli, Jr., ECF No. 152-1, (b) the declaration of Nick Brustin, ECF No. 152-3, and (c) the declaration of Ilann M. Maazel, ECF No. 159-1.

Andrew G. Celli, Jr. is a co-founding partner of ECBAWM. He explains the litigation strategy for Plaintiff's case. ECBAWM "embarked upon a two-pronged approach to representing [Plaintiff] as administrator of the estate of her daughter." ECF No. 152-1 ¶ 35. Counsel litigated one action in the Court of Claims and used discovery developed during that action to pursue additional relief in federal court. *Id.* ¶ 38. Counsel also "liaised with the Monroe County District Attorney's office regarding the status and impact of their prosecution of two of the OPWDD staff members who are defendants in this case in order to obtain evidence for Plaintiff's civil rights case." *Id.* ¶ 53. After motion practice and only a few months into discovery in this action, Plaintiff obtained a $2.25 million offer of judgment to resolve the claims of supervisory liability in this action. *Id.* ¶ 44.

Nick Brustin is a named partner at the New York City law firm of Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP. For the last 28 years, he has practiced in the field of "complex federal civil rights litigation" in "New York City and around the country." ECF No. 152-3 ¶ 1.

4

He avers that, "[b]ased on [his] experience with the Western District of New York bar and [his] decades of civil rights work, in [his] professional judgment ECBAWM's specialized expertise and ability in litigating the abuse of disabled individuals would likely not have been possible for the plaintiff here to obtain in-district." *Id.* ¶ 14. Attorney Brustin states that he is "unaware of any law firm *at all* with a similar rate of success in such cases or with comparable settlement figures to those ECBAWM has obtained for its clients, much less any law firm with primary offices in the Western District of New York." *Id.*

Ilann M. Maazel is a partner at ECBAWM. Attorney Maazel states that Plaintiff was referred to his firm by a former client, whose deceased son had died while in the care of the New York Office for People With Developmental Disabilities. ECF No. 159-1 ¶ 2. He writes, "I believe [Plaintiff] was advised by my former client that sophisticated civil rights counsel was needed for this case, as in his experience, local firms did not have the expertise of litigating complex disability abuse and neglect cases—let alone complex disability death cases—in federal court." *Id.* ¶ 3. He avers that his firm is a "leader in New York state" in the "niche practice area" of "complex disability abuse and neglect cases." *Id.* ¶ 5. Indeed, it "pioneer[ed] the theory of liability that supervisory employees of state-run facilities for individuals with disabilities could be held liable under 42 U.S.C. § 1983 for violations of residents' substantive due process rights under the Fourteenth Amendment." *Id.* To his knowledge, "no other firm in New York State, and few nationally, have as much experience litigating these types of Section 1983 cases, and we are unaware of any lawyers in the Western District of New York who bring such cases, let alone with expertise necessary to achieve the significant favorable results that ECBAWM does." *Id.* ¶ 6.

Plaintiff's evidence is sufficient to overcome the presumption of in-district rates. Defendants do not dispute Plaintiff's matter was complex. *See* ECF No. 153. Even if the standards

applicable to Plaintiff's claims for supervisory liability were, in general terms, well-established, successful litigation of those claims required Plaintiff to investigate and disentangle the complicated factual situation that existed at the residential facility in which the incident occurred. *See generally Parks v. Stevens*, No. 20-CV-6384, 2022 WL 61011 (W.D.N.Y. Jan. 6, 2022). Counsel was able to use their expertise and knowledge in this niche area to investigate Plaintiff's claims, leveraging the criminal and Court-of-Claims actions to bolster its prosecution of the federal case. *See* ECF No. 152-1 ¶¶ 38, 53. Notably, within four months of the start of discovery, counsel was able to obtain a $2.25 million offer of judgment for Plaintiff. This fact provides support for Attorneys Brustin's and Maazel's claims that ESBAWM's work product and results would have substantially exceeded that of any local firm willing to take the case. That local counsel may have eventually obtained a similar award, as Defendants contend, *see* ECF No. 153 at 3, is not the end to the inquiry; the timeframe in which the award was obtained is also relevant. *Cf. Fields v. Kijakazi*, 24 F.4th 845, 854 (2d Cir. 2022) ("It would be foolish to punish a firm for its efficiency and thereby encourage inefficiency."). Based on the evidence presented, the Court concurs with Attorney Maazel's observation that, "[t]hough other firms may be experienced in other civil rights cases . . . and wrongful death personal injury cases in state court," it is "highly unlikely [] that a local firm within the Western District of New York would have been able to obtain the result ECBAWM achieved in this case so far." ECF No. 159-1 ¶ 15.

While the Court is willing to award Plaintiff's counsel at an out-of-district rate, there remains the question of whether counsel's proposed hourly rates are reasonable. The Court concludes that they are excessive. Rather, consistent with other awards for attorneys practicing in the Southern District of New York, the Court concludes that an hourly rate of $650 per hour is appropriate for Attorney Celli, lead counsel. *Accord Robinson v. N.Y.C. Transit Auth.*, No. 19-

CV-1404, 2024 WL 4150818, at *9 (S.D.N.Y. Aug. 16, 2024) (finding $650 per hour reasonable for litigation director with over forty years of legal experience in complex civil rights litigation); *Pettiford v. City of Yonkers*, No. 14-CV-6271, 2020 WL 1331918, at *5 (S.D.N.Y. Mar. 20, 2020) (collecting cases); *Independence Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 496 (S.D.N.Y. 2019) (collecting cases). The Court has also fashioned proportional hourly rates for the other attorneys and paralegals involved in this case, considering their involvement, experience, and the other *Johnson* factors. *See Chaparro*, 2021 WL 5121140, at *1 n.2; *see also* ECF No. 152-1 ¶¶ 53-72 (describing roles and experience of counsel and paralegals). The reasonable hourly rates are set forth in Section III, *infra*.

## II. Reasonable Hours Worked

Defendants argue that the Court should reduce the number of hours worked on several grounds. The Court will examine each below.

### a. Post-judgment Fees

Defendants assert that Plaintiff should not be entitled to any fees that were incurred after June 30, 2022, when Plaintiff accepted the Offer of Judgment. ECF No. 153 at 10. Defendants contend that such fees were "unrelated to any of the causes of action in this case." *Id.* The Court disagrees. "Prevailing parties under Section 1988 are [] entitled to recover a reasonable fee for preparing and defending a fee application." *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017). "That includes attorneys' fees incurred as a result of appeals related to the defense of a fee award." *Id.* Given this Second Circuit precedent, and the fact that Defendants present no legal authority to support their contrary argument, *see* ECF No. 153 at 10, the Court concludes that the time spent in connection with the dispute over the proper interpretation of the Offer of Judgment may be included.

### b. Unnecessary Time Billed

Plaintiff's firm billed "a total of 1,323.20 hours" in connection with this matter. ECF No. 152-4 at 23. Defendants assert, as a general matter, that the hours worked are facially excessive for a case that "never went to trial and had relatively minimal discovery—a total of four depositions were conducted." ECF No. 153 at 9. Defendants also criticize billing for press statements, monitoring the criminal trial of two of the defendants, vague or redacted billing entries,[2] and time spent on unsuccessful claims. *See id.* Defendants request a "15% reduction of billed hours" to "trim the fat" from Plaintiff's fee application. *Id.* at 8-11.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *EZ Pawn Corp. v. City of New York*, No. 16-CV-3852, 2024 WL 3431007, at *4 (E.D.N.Y. July 15, 2024). "In evaluating whether the hours in a fee application are excessive, courts need not evaluate and rule on every entry in the application." *Id.* (internal quotation marks omitted). "Instead, a court may utilize a percentage cut as a practical means of trimming fat from a fee application if necessary. In determining whether the number of hours billed was reasonable, district courts have broad discretion and may rely on both their experience with the case and their experience with the practice of law." *Id.* (internal quotation marks, citation, and brackets omitted); *see also Smith v. City of New York*, No. 19-CV-6198, 2022 WL 939711, at *9 (E.D.N.Y. Mar. 28, 2022) (noting that "courts routinely apply across-the-board reductions for vague entries" like "'[c]ommunications regarding records and status,' '[r]eview communications,' and 'trial prep'").

The Court is persuaded that Plaintiff's hours billed are excessive. While the Court acknowledges that this was a more complicated matter, it finds that it was also overstaffed—

---

[2] The Court directed Plaintiff to file unredacted billing records for the Court's review. ECF No. 161. Plaintiff has complied. ECF No. 162.

8

involving nineteen different attorneys and eight paralegals during the course of the litigation. *See* ECF No. 152-4 at 23-24. Many of the billing entries involve conferences or communications between firm staff. *See, e.g.*, ECF No. 162 at 4, 5, 6, 7, 10, 11, 14, 15, 16, 34, 35, 40; *see also Chrysafis v. Marks*, No. 21-CV-2516, 2023 WL 6158537, at *7 (E.D.N.Y. Sept. 21, 2023) ("Courts have generally found that an across-the-board reduction is appropriate where the records demonstrate excessive communication with co-counsel" (internal quotation marks, brackets, and ellipsis omitted)). And staffing was sometimes top-heavy, with many straightforward tasks—like service, editing, routine calls, drafting motion papers, and appellate-argument preparation—undertaken by more expensive partners. *See, e.g.*, ECF No. 162 at 16, 17, 34, 37; *see also Marks*, 2023 WL 6158537, at *8 ("Recognizing that an objectively reasonable client may prefer that more hours be billed to cost-effective associates, many courts in this circuit reduce fee awards where hours recorded fall heavily onto partners and senior associates billing at high rates."). Finally, the Court concurs with Defendants that many entries are vague, *see, e.g.*, ECF No. 162 at 1, 11, 12, 18, 22, 24, 34, which impedes the Court's "ability to decipher whether the time expended has been reasonable." *Marks*, 2023 WL 6158537, at *8.

For these reasons, the Court agrees with Defendants that a 15% across-the-board reduction of hours is appropriate. *Accord Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 710 (2d Cir. 2009) (summary order) (affirming district court's "25% across-the-board reduction in fees because plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel").

### III. Lodestar

The Court now calculates the lodestar. Before applying the 15% reduction, the Court calculates an initial amount for each staff member based on the reasonable hourly rate and requested hours:

| Attorney | Reasonable Hourly Rate | Requested Hours | Total |
|---|---|---|---|
| Andrew G. Celli, Jr. | $650 | 381.8 | $248,170 |
|  | $325 (Travel) | 16.3 | $5,297.50 |
| Illann M. Maazel | $600 | 58.1 | $34,860 |
|  | $300 (Travel) | 6.5 | $1,950 |
| Debbie Greenberger | $500 | 2.5 | $1,250 |
| Katherine Rosenfeld | $525 | 2.1 | $1,102.50 |
| O. Andrew F. Wilson | $525 | 3 | $1,575 |
| Doug E. Lieb | $400 | 145.7 | $58,280 |
|  | $200 (Travel) | 13 | $2,600 |
| Dan Eisenberg | $375 | 1 | $375 |
| Emma Freeman | $375 | 4.9 | $1,837.50 |
| Ananda V. Burra | $400 | 420.7 | $168,280 |
| Noel R. León | $400 | 43.2 | $17,280 |
| David Berman | $375 | 1.2 | $450 |
| Marissa Benavides | $375 | 2.1 | $787.50 |
| Julian Oppenheimer | $300 | 1.1 | $330 |
| Nick Bourland | $300 | 1.5 | $450 |
| Max Selver | $375 | 1 | $375 |

| Alanna Kaufman | $375 | .7 | $262.50 |
|---|---|---|---|
| Hannah Fishman | $375 | 4.1 | $1,537.50 |
| Nairuby Beckles | $375 | 1.5 | $562.50 |
| Eric Abrams | $400 | 78.4 | $31,360 |
| Alexandra Berdon | $150 | 10.8 | $1,620 |
| Eman Merghani | $150 | 88.1 | $13,215 |
| Nathan File | $150 | 24.2 | $3,630 |
| Kathryn Ravey | $150 | 3.3 | $495 |
| Tim Roche | $150 | .8 | $120 |
| Julia Kaplan | $150 | .6 | $90 |
| Nicole Kronberg | $150 | 2 | $300 |
| Jocelyn Rodriguez | $150 | 3 | $450 |
| | | **Total:** | $598,892.50 |

Next, to account for the excessive hours billed, the Court applies a 15% reduction, which yields a total lodestar amount of $509,058.63. Added to this amount are $24,051.19 in costs, which Defendants do not formally contest.[3] See ECF No. 153. The Court concludes that no other adjustment is necessary. See Millea, 658 F.3d at 167. Accordingly, Plaintiff is entitled to $533,109.82 in fees and costs.

---

[3] Defendants do criticize counsel's decision to travel to participate in and monitor the criminal sentencing of Defendants Abdo and DiLallo. ECF No. 153 at 9. Because the actions of those two defendants are inextricably intertwined with the potential liability of Stevens and Wall, the Court does not find the fees and costs associated with such actions unreasonable.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for attorney's fees and costs (ECF No. 152) is GRANTED IN PART and DENIED IN PART, in that Plaintiff is granted an award of $533,109.82 in fees and costs. The Clerk of Court is directed to amend the judgment against Paul Stevens and Jennifer Wall to reflect that award.

IT IS SO ORDERED.

Dated: October 8, 2024
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York